A. G. RUSSELL COMPANY *v.* C. J. MILLER ET AL.

[53 South. 495.]

1. COMMON CARRIERS. *Right to demand prepayment of freight. Discrim-
ination between shippers.*

   Common carriers have the right to demand of consignors the trans-
   portation charges in advance.

2. DISCRIMINATION BETWEEN SHIPPERS.

   At common law common carriers have the right to require prepayment
   of freight charges from all or some shippers, as they may deem
   best, and this right of discrimination is not abrogated by our
   statutes providing for the supervision of common carriers.

APPEAL from the circuit court of Warren county.
HON. H. C. MOUNGER, Judge.

Suit by A. G. Russell Company against C. J. Miller
et al. From a judgment sustaining a demurrer to the
declaration and dismissing the suit, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. C. Bryson,* for appellant.

It seems to me that the rule contended for by appellees, and sustained by the court below, amounts to this, namely: That a common carrier may out of mere caprice, ill will or malice refuse to serve one shipper unless he prepays while it at the same time serves all others without such demand. Clearly this is the grossest discrimination and in case the particular shipper happens to be without money his ruin must follow. Shipping cotton is not like household goods, which may be of doubtful value. There might be some reason for the rule in case of consignments of uncertain value or of stuff not readily convertible or perishable, but even then all should be treated alike. If the rule contended for by the defendant should be held to be legal then it is in the power of the common carriers to break up any commission merchant in the city of Vicksburg or Jackson or any other town within the cotton belt, because in all of them the same custom prevails in regard to the shipment of cotton, viz: To collect freight and other charges from the consignee at the point of destination.

We are not entirely without authority for our position expressed above.

The 5th Ency. of Law, 2d Ed., p. 166, states the general rule to be that a common carrier has the right to demand the prepayment of freight and then continues:

"The rule may be otherwise, however, where a long usage on the part of the carrier is shown, under which all shippers were allowed to ship their goods and have the charge collected at the destination."

Under this text is cited the case of *Reed* v. *Philadelphia, etc. R. Co.,* 3 Houst. (Del.) 176; *Leach* v. *N. Y. etc.,* 89 Hun (N. Y.) 377.

Neither of these cases are in my office so I cannot elaborate upon the opinions. I find, however, quotations from both of the opinions under the text above cited.

In the Reed case it is said: "Whether a railroad company can excuse a refusal to accept and carry freight on the ground that the charges were not prepaid will depend upon its custom as to collecting charges, which is ordinarily a question for the jury."

In the Leach case it was said: "When the carrier's defense to a suit for failure to carry is that the shipper failed to tender the freight charges in advance, the shipper may show the value of the goods and the carrier's knowledge thereof, to prove that the company had, in such goods, ample security for the payment of freight charges, so that there was no excuse for stopping the goods in transit."

*Henry* and *Canizaro,* for appellee.

We cheerfully agree with learned counsel for appellant that the general rule is "that a common carrier has the right to demand the prepayment of freight," and to warrant us in so agreeing with him the decisions of the courts are so numerous that we have been unable to find a dissenting court on the proposition; we therefore just as cheerfully disagree with him, when he says the rule is not universal.

This honorable court in case *Corinth Engine & Boiler Works* v. *Mississippi Central Ry. Company,* 49 So. Rep. p. 261, Whitfield, C. J., delivering the opinion, says: "It is not a hard rule as applied to common carriers, since they always have the right to demand of the consignor their transportion charges in advance and the rights of the connecting road are no better in this respect than those of the initial carrier." Again at page 262 near bottom of right-hand column this court says: Nor is a carrier bound to receive goods unless the freight or pay for carriage is first paid to him; and he may in all cases secure the payment of the carriage in advance."

In *Gamble-Robinson Commission Company* v. *Chicago & Northwestern Ry. Company,* 168 Fed. p. 161, and

volume 16, A. & E. Ann. Cases, p. 613, we find a case in
which a more magnified, villainous and grossest kind of
discrimination is set out, and yet the court by a unani-
mous finding (Hook, J., only dissenting on a question of
interstate commerce law, which question does not figure
in this case) upheld the right of the railroad company to
require the shippers to prepay freight, holding as it
does that such requirements are not in any sense un-
reasonable discrimination.

At p. 617, vol. 16 A. and E. Ann. Cases, the court says:
"The question therefore is, do the defendants subject
the plaintiff to any undue or unreasonable prejudice or
disadvantage by requiring it to prepay the charges on
its freight, whether the carrier customarily transported
freight for others similarly situated, without such pre-
payment? The defendant had the right under the com-
mon law to demand prepayment of its charges of the
plaintiff and to grant credit to others for similar
charges. It had the same right in this regard that every
merchant, every man and every corporation has to grant
credit to one or to all but one, and to refuse it to others
or to him. There is nothing unjust or morally wrong in
the exercise of this right, because the plaintiff had no
moral right to the extension of credit and justice did
not require that the defendant should grant to the plain-
tiff the same credit that it extended to others."

Note at page 621, vol. 16, A. & E. Ann. Cases, 86 Fed.
Rep. page 407; *Gulf, C. & S. F. Ry. Co. et al.* v. *Miami S.
S. Co.*

Other cases, if there be any needed, which we cite
without discussion along the same line: 61 Fed. Rep., p.
158; *Oregon Short Line* v. *Ry. Co.,* 26 L. R. A., p. 192;
*Little Rock Ry. Co.* v. *St. Louis & I. M. Ay. Co.*; 6 Cyc.,
p. 374 and 495; 2 Hutchinson Carriers, section 567; 5
A. & E. Encyclopedia of Law, 2d Edition, page 166.

ANDERSON, J., delivered the opinion of the court.

The appellant, A. G. Russell Company, sued the appellees, C. J. Miller and others, in the circuit court of Warren County, for damages for injuring its business. Appellees interposed a demurrer to the declaration, which was sustained by the court, and, appellant declining to plead over, judgment final was rendered dismissing the suit, from which judgment this appeal is prosecuted.

The declaration sets up substantially the following facts: That appellant is a corporation, engaged in the business of a cotton factor, its place of business being in the city of Vicksburg; that it has customers at points along the Yazoo and Sunflower rivers, to whom it makes advances in consideration of the shipment to it by such customers of cotton to be sold on commission, from the proceeds of which it reimburses itself for such advances; that appellees own a line of steamboats running between points on the Yazoo and Sunflower rivers, and the city of Vicksburg, being common carriers of freight and passengers; that it is the custom of appellees, and has been for a long time, to accept consignments of cotton along the Yazoo and Sunflower rivers to cotton factors in the city of Vicksburg, and collect the freight, levee taxes, and landing charges from such consignees on delivery of the cotton; that the appellees still follow this custom as to all other cotton factors in the city of Vicksburg, except appellant; that at divers times appellees refused to accept from the customers of appellant, at points along said rivers, cotton consigned to appellant, and collect the freight, levee tax, and landing charges on delivery, but made an exception of appellant, and demanded of its customers the prepayment of such freight, levee tax, and landing charges; that this discrimination against appellant has driven customers away from it and injured its business. Both actual and punitive damages are sued for.

It is contended on behalf of appellant that the facts set out in its declaration constitute an unlawful discrimination against it by the appellees. Common carriers have the right to demand of consignors their transportation charges in advance. *Corinth Engine & Boiler Works* v. *Mississippi Central R. R. Co.,* 49 South. 261; 2 Hutchinson on Carriers (3d Ed.), § 567. And at common law they have the right to require the prepayment of such charges by all shippers, or some of them, as they may deem best; having the "same right as any other individual or corporation to exact payment for a service before it is rendered, or to extend credit." 2 Hutchinson on Carriers (3d Ed.), § 567; *Little Rock & Memphis 'R. Co.* v. *St. L., I. M. & S. R. Co.,* 63 Fed. 775, 11 C. C. A. 417, 26 L. R. A. 192; *Gamble-Robinson Com. Co.* v. *Chicago & N. W. Ry. Co.,* 168 Fed. 161, 94 C. C. A. 217, 21 L. R. A. (N. S.) 982, 16 Am. & Eng: Ann. Cas. 613; *Allen* v. *Cape Fear & Y. V. Ry. Co.,* 100 N. C. 397, 6 S. E. 105. And the common-law rule is not abrogated by our statutes, providing for the supervision of common carriers, which are not as comprehensive as the interstate commerce law, which latter statute leaves such rule in full force, as held in the authorities cited last above, except the South Carolina case, in which the question was not involved nor considered.

We quote the following from Judge Thayer, in *Little Rock & Memphis R. Co.* v. *St. L., I. M. & S. R., supra,* which is a very clear and able elucidation of the question: "Usually, no doubt, railroad companies find it to their interest, and most convenient, to collect charges from the consignee; but we cannot doubt their right to demand a reasonable compensation in advance for a proposed service, if they see fit to demand it. This common-law right of requiring payment in advance of some customers, and of extending credit to others, has not been taken away by the interstate commerce law, unless it is taken away indirectly by the inhibition contained

in the third section of the act, which declares that an interstate carrier shall not 'subject any particular person, company, corporation or locality . . . to any undue or unreasonable . . . disadvantage in any respect whatever.' This prohibition is very broad, it is true; but it is materially qualified and restricted by the words 'undue or unreasonable.' One person or corporation may be lawfully subjected to some disadvantage in comparison with others, provided it is not an undue or unreasonable disadvantage. In view of the fact that all persons and corporations are entitled at common law to determine for themselves, and on considerations that are satisfactory to themselves, for whom they will render services on credit, we are not prepared to hold that an interstate carrier subjects another carrier to an unreasonable or undue disadvantage because it exacts of that carrier the prepayment of freight on all property received from it at a given station, while it does not require charges to be paid in advance on freight received from other individuals and corporations at such station. So far as we are aware, no complaint had been made of abuses of this character at the time the interstate commerce law was enacted, and it may be inferred that the particular wrong complained of was not within the special contemplation of congress. This being so, the general words of the statute ought not to be given a scope which will deprive the defendant company of an undoubted common-law right, which all other individuals and corporations are still privileged to exercise, and ordinarily do exercise."

In *Gamble-Robinson Com. Co.* v. *Chicago & N. Ry. Co., supra,* Judge Sanborn, for the court, quotes the above language of Judge Thayer with approval. In the latter case the authorities will be found collected in the notes. The state has not undertaken to supervise common carriers in all relations to their customers, but in such only as known evils had grown out of. In *Allen* v.

*Cape Fear & Y. V. Ry. Co., supra,* the court says: "And we do not perceive any legal wrong done to one to whom credit may not be given, because it is given to others, it may be, because of their punctuality in paying bills whenever they are presented." It is hardly conceivable that a carrier would arbitrarily require the prepayment of freight charges of some of its customers, and not of others, under exactly the same conditions. Until the legislature finds the existence of such an evil, and provides a remedy by law, the courts are without power to do so.                                              *Affirmed.*